## D. H. Harts, Appellee, v. Chicago and Alton Railroad Company, Appellant.

1. RAILROADS, § 941*—*when instruction as to origin of fire erroneous.* In an action against a railroad company for damages by fire alleged to have been caused by sparks and cinders being thrown upon plaintiff's building by defendant's locomotive, an instruction on question of the origin of the fire, which in effect states that plaintiff is entitled to a verdict if it furnished more evidence on that point than defendant, *held* inaccurate and misleading.

2. RAILROADS, § 943*—*when verdict for damages resulting from railroad fire excessive.* In an action for damages resulting from loss of plaintiff's mill and machinery therein resulting from emitting of sparks and cinders of defendant's locomotive, a verdict and judgment for plaintiff for $16,000 *held* excessive, where the evidence shows that plaintiff purchased the mill and machinery and lot for $15,000 and the machinery was out of date and the business of conducting the mill had run down and was unprofitable.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

3. Railroads, § 919—*burden of proving origin of fire.* In an action against a railroad for loss of a building by fire alleged to have been caused by sparks from defendant's locomotive, it is incumbent upon the plaintiff to furnish evidence sufficient to establish to the satisfaction of a reasonable mind the fact that the engine did throw sparks and cinders that started the fire.

4. Jury, § 80*—*questions which may be propounded to jurors.* In an action against a railroad company for loss of a building by fire caused by sparks from defendant's locomotive, *held* error for trial court to refuse to permit defendant on examination of jurors to ask the jurors if they were acquainted with the officers of, had stock in, or were agents of, or had any connection with certain insurance companies which were beneficiaries in the suit.

Appeal from the Circuit Court of Logan county; the Hon. Thomas M. Harris, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 16, 1913. Rehearing denied and modified opinion refiled November 6, 1913.

Blinn & Covey, for appellant; Silas H. Strawn, of counsel.

David H. Harts, Jr., Bates, Harding, Edgerton & Bates and Barger & Hicks, for appellee.

Mr. Justice Creighton delivered the opinion of the court.

This was an action on the case brought by the appellee against appellant Company, to recover for damages alleged to have been caused by reason of a locomotive engine of appellant throwing sparks and cinders to, upon and into the building of the appellee whereby the building of appellee was destroyed by fire and the machinery therein greatly damaged.

The plea of the general issue was filed and the cause was heard by the court and a jury and a verdict returned assessing the damages of the appellee at the sum of $16,000. After overruling motions for new trial and in arrest of the judgment, the court entered judgment in the sum of the verdict, and thereupon this appeal was perfected.

The building belonging to the appellee which was

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

destroyed by fire was a mill, located on a lot adjoining the right of way of the appellant's railroad, in Lincoln, Illinois. The fire occurred in the afternoon of the 15th day of August, 1910, destroying the mill building and damaging the machinery.

The question of how the mill was set afire was a very closely contested question of fact. There was no direct testimony bearing upon this question. Two witnesses for appellee testified to a heavily loaded coal train passing along the track of appellant's railroad, going north, just a short time prior to the discovery of the fire. One of them, a Miss Gwynn, testified that the train passed shortly before the fire, going north, and that she saw sparks and cinders coming from the engine. She was unable to tell whether it was daylight or dusk at the time, and stated that it did not rain that evening, while many others stated it did rain. Miss Gwynn was in the company of a Mr. Hoblit, who testified to the same state of facts. Mr. Hoblit's testimony, while very definite as to the fact of the train passing along on that evening, going north, was very uncertain as to other matters about which he was questioned, and his admission that he was not engaged in any business of any kind and that he had but recently served a term in the penitentiary did not serve to strengthen his statements.

On the part of the appellant it was shown by the records of the train dispatcher's office that the last engine passed through Lincoln more than an hour before the fire was discovered. Moreover, the evidence shows conclusively that a wreck had occurred at Williamsville, sixteen miles south of Lincoln, at 3.25 on the same afternoon, and that no trains were able to pass through that point going north until about eight o'clock that night, some two hours after the fire had been discovered. The train crews which passed through Lincoln that afternoon testified that the locomotive engines on their respective trains were equipped with the latest approved and most efficient

spark arresters, and that the said engines were in the hands of skilful employes at the time.

There is much other evidence tending to support the respective positions of the parties hereto, but the foregoing chiefly is relied upon by them upon the question of the origin of the fire, and shows how closely contested this particular point was on the hearing. In this condition of the proof, the jury should have been carefully and accurately instructed on this point.

At the request of the appellee the court gave to the jury the following instruction:

"The court instructs the jury that while it devolves upon the plaintiff to show by a preponderance of the evidence that the fire in question was caused or set out by fire, sparks or cinders thrown or escaping from a locomotive engine of the defendant company, while passing along its, defendant company's railroad and that the property of the plaintiff was burned or destroyed or damaged without fault on his part, yet it is not necessary for the plaintiff, in order to make such proof to sustain the declaration to show that such sparks, cinders or fire were seen thrown or were seen to escape from the defendant's engine and alight or set fire by some person or persons; it is sufficient on that point if, from all the circumstances detailed by the witnesses and all other evidence introduced on the trial, that the greater weight on that point is on the side of the plaintiff then you are at liberty to say that the plaintiff has established that fact by a preponderance of the evidence."

This instruction is inaccurate and misleading, and might easily have been understood by the jury to have advised them that very slight circumstances tending to show that appellant's engine emitted sparks and cinders on the occasion in question would be sufficient to warrant a verdict in favor of the appellee.

It was incumbent upon the appellee to furnish evidence sufficient to establish to the satisfaction of a reasonable mind the fact that the engine did throw sparks and cinders that did, in fact, start the confla-

gration. This duty was imposed by law upon the appellee, and it cannot be said that because the appellee furnished more evidence on that point than the appellant, that he is thereby entitled to a verdict, and yet that is what this instruction said to the jury. If the appellant had not introduced any evidence the appellee would not have been relieved from proving his case by evidence,—not to create a suspicion, not more evidence than an opponent who did not furnish any evidence,—but evidence sufficient to establish, as a fact, the origin of the fire.

In addition to the proof being so closely contested upon the question of whether appellant's engine threw sparks and cinders and thereby set fire to the mill, the evidence is uncertain and unsatisfactory as to the amount of the damages sustained by the appellee.

The proof shows the mill building which was destroyed had been built for about fifty years, and that the machinery in the mill had been there for some twenty-five years; that the appellee had purchased the mill, including the machinery and the lot upon which the mill was built, for $15,000; that very little had been expended for improvements; that after the fire appellee found that machinery to the value of $1,300 or $1,400 had been saved; that the business conducted in the mill had run down and was not profitable; that much of the machinery in the mill was out of date and was not in use and that the mill was not operated as a regular mill, but for grinding feed. The lot upon which the mill stood is still the property of the appellee.

From a full and careful examination of all evidence in this record upon the point of the damages, we feel that the amount of the judgment herein, $16,000, is excessive, in the light of the price paid for the whole property, the value of the machinery saved, the use to which the mill building was put and the fact that the appellee still has the lot upon which the mill stood. There is much evidence in the record upon this point,

but a careful reading of it has failed to overcome the view here expressed, that the judgment is excessive.

It is insisted by appellant that the trial court erred in refusing to permit it, on the examination of the jurors for the purpose of ascertaining whether or not they were acceptable, to ask the jurors if they were acquainted with the officers of, had stock in, or were agents of or had any connection with the Hartford Fire Insurance Company, the Hanover Fire Insurance Company or the Springfield Fire & Marine Insurance Company.

These insurance companies, while not mentioned as plaintiffs in the declaration, were, in fact, beneficiaries in the suit to the extent of $10,000; and being thus interested it became important, in determining as to the qualifications of the jurors, to learn of their connection with, relation to, or prejudice in favor of such companies.

The interest of these several insurance companies seems to have been well understood by counsel, and for the purpose of guarding against any prejudicial influence against appellant these questions were properly propounded to the jurors, and it was error to deny to appellant the right of inquiry.

For the reasons above set forth, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*